IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN C. GARDOSKI, | \| | C.A. No.:   19 - 1082 |
| Plaintiff, | \| | **TRIAL BY JURY DEMANDED** |
| v. | \| | |
| PATS AIRCRAFT, LLC, a Delaware limited liability company, d/b/a ALOFT AEROARCHITECTS, | \| | **COMPLAINT** |
| Defendants. | \| | |

1. Plaintiff John C. Gardoski is a resident of the State of Delaware residing at 15402 Hudson Road, Milton, Delaware, 19968.

2. Defendant PATS Aircraft, LLC is a Delaware limited liability company whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

3. Defendant PATS Aircraft, LLC performs business operations in Delaware as Aloft AeroArchitects with an address of 21652 Nanticoke Avenue, Georgetown, Delaware, 19947.

4. Defendant is an employer within the State of Delaware and within the jurisdictional coverage of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343, 28 U.S.C. § 1331, and 42 U.S.C. § 12117(a).

6. Plaintiff brings this action to redress the wrongs done to him by Defendant's discrimination against him on the basis of his disability.

7. Venue for this cause of action lies in the District of Delaware pursuant to 28 U.S.C. § 1391(b), as the acts alleged as the basis for this claim took place within the boundaries of that District.

8. Plaintiff timely submitted a complaint of discrimination on the basis of his disability to the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").

9. Plaintiff has received a Notice of Right to Sue letter from the EEOC.

10. Plaintiff filed this Complaint within ninety (90) days of receiving the aforementioned Notice of Right to Sue.

11. At all times relative to this complaint, Plaintiff had a "disability" as that term is defined by 42 U.S.C. § 12102(1), *i.e.*, Plaintiff had a physical impairment that substantially limited one or more of his major life activities, and/or he had a record of such impairments, and/or he has been regarded by Defendants as having such impairments. Specifically, Plaintiff was diagnosed with colon cancer. Plaintiff was cleared for full duty before his employment was terminated; however, Defendant believed the diagnosis of colon cancer was a physical impairment that substantially limited one or more of Plaintiff's major life activities.

12. Plaintiff began his employment with Defendant on or about April 2006.

13. At all times relevant to this Complaint, Plaintiff was employed as a Materials Stockroom III at the Defendant's Georgetown location and was assigned to the first shift.

14. At all times relevant to this Complaint, Plaintiff was qualified for his job position and satisfactorily performed all duties of his job position.

15. Due to a serious health condition, colon cancer, Plaintiff was required to take approved medical leave from on or about January 1, 2017 to on or about February 13, 2017.

16. Throughout Plaintiff's period of approved medical leave, Plaintiff made every attempt to keep Defendant informed of his serious health condition.

17. A second shift employee, Robert Patterson, was placed in Plaintiff's first shift position while Plaintiff was on approved medical leave.

18. During the period in which Plaintiff was on approved medical leave, Defendant allegedly instituted a reduction in force ("RIF").

19. Upon returning to work after approved medical leave, Plaintiff was summarily terminated. The reason given for the termination was the alleged RIF.

20. Upon returning to work after approved medical leave, Plaintiff had no work restrictions.

21. Defendant's employee handbook states that, "… ordinarily, severance pay is not granted. Under certain circumstances, however, Company management may elect to offer severance to an employee in exchange for the employee signing a general release agreement prepared by the Company." Aloft AeroArchitects Employee Guide, at 20. The Aloft AeroArchitects Employee Guide is attached as Exhibit "A".

22. Plaintiff was informed by letter dated February 13, 2017, that his employment had been terminated and that he would receive information related to severance. The letter also stated that Plaintiff was eligible for rehire and welcomed him to apply for positions that the company may have open in the future. The letter is attached as Exhibit "B".

23. Plaintiff was offered a severance package on February 13, 2017, which included a payment of $4,699.20 in exchange for waiving various causes of action against the company, including causes of action related to claims under the ADA. The Severance Agreement is attached as Exhibit "C".

24. Plaintiff's direct supervisor, John Driscoll, subsequently explained to numerous people that Plaintiff was in fact terminated because of Defendant's concerns that the serious medical condition for which Plaintiff had taken approved medical leave would affect his future job performance and attendance.

25. Specifically, John Driscoll stated to Leo Gardoski, brother of Plaintiff, that he had terminated Plaintiff because Plaintiff was not in the greatest of health.

26. John Driscoll also stated to Leo Gardoski that he would not rehire Plaintiff in the future even though Human Resources had stated that Plaintiff was eligible for rehire in the future.

27. Specifically, John Driscoll stated to Lisa Isenhower, an employee of the Defendant at the Defendant's Laurel, Delaware location, that he terminated Plaintiff because he felt Plaintiff would miss too much work due to medical appointments associated with Plaintiff's recent cancer diagnosis.

28. Defendant's representation that Plaintiff was eligible for rehire was false, disingenuous and stated for the purpose of fraudulently inducing the Plaintiff to sign the Severance Agreement.

29. Fraudulent inducement may be claimed when (1) the defendant offers a false representation of material fact; (2) the defendant had knowledge of or belief as to the falsity of the representation or the defendant acted with reckless indifference to the truth of the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) there was damage to the plaintiff as a result of such reliance.[1] "An action for fraud can occur not only where

---

[1] *Duffield Assocs. v. Meridian Architects & Eng'rs, Ltd. Liab. Co.*, 2010 Del. Super. LEXIS 293, at *12 (Del. Super. July 12, 2010)

4

there is an overt misrepresentation but may exist where there is a deliberate concealment of material facts or silence when one ha[s] a duty to speak."[2]

30. Defendant's misrepresentation was material to Plaintiff's execution of the Severance Agreement, as Plaintiff wanted to maintain a relationship with Defendants which would result in his rehire in the near future.

31. Statements made by John Driscoll demonstrate Defendant had knowledge that Defendant's statement regarding Plaintiff's eligibility for rehire was a false representation.

32. Defendant's statement that Plaintiff was eligible for rehire was intended to induce Plaintiff to sign the Severance Agreement.

33. Plaintiff justifiably relied upon this misrepresentation, which induced him to execute the Severance Agreement.

34. Had Defendant truthfully represented to Plaintiff that it had no intention of rehiring him because of his medical condition, Plaintiff would not have executed the Severance Agreement.

35. Because Plaintiff was fraudulently induced into signing the Severance Agreement, Plaintiff requests this Court rescind the Severance Agreement or take whatever actions necessary to declare the Severance Agreement to be unenforceable.

36. If Plaintiff had not suffered a disability, Plaintiff would not have been subject to the RIF.

37. Because Plaintiff suffered from a disability, and/or had a record of a disability, and/or was regarded by Defendants as having a disability, he suffered an adverse employment decision. The adverse decision was causally related to a perceived disability. Robert Patterson, who replaced

---

[2] *Id.*

Plaintiff at his position during Plaintiff's FMLA leave, continued to do Plaintiff's work after Plaintiff's termination.

38. Defendant is liable for the actions of its agents as set forth in this complaint under the principles of agency and the doctrine of *respondeat superior* and pursuant to the ratification of the agents' actions by Defendant.

39. During the period of his employment, Plaintiff was subjected to differential treatment because he suffered from a disability, and/or had a record of a disability, and/or was regarded by Defendants as having a disability by agents of the Defendant, including but not limited to:

   a) Being permanently replaced by a second shift employee who had less experience, skill and length of service; and

   b) Termination based on his disability or perceived disability.

40. The wrongful acts committed by the Defendant, as stated hereinabove, were willful, wanton, and committed in bad faith.

41. As a direct result of the actions of the Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages and related benefits.

## COUNT I – ADA

42. Plaintiff hereby restates and incorporates by reference paragraphs 1 through 41 hereinabove.

43. By committing the aforementioned acts, including terminating Plaintiff, Defendant has discriminated against Plaintiff on the basis of his disability in violation of the ADA.

44. As a direct result of the discriminatory conduct of the Defendant, Plaintiff has suffered damages, including but not limited to, physical and emotional injury, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

    a) back pay, including interest;

    b) reinstatement, if feasible, or in the alternative, front pay;

    c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

    d) punitive damages;

    e) pre-judgment and post-judgment interest;

    f) attorney's fees; and

    g) any other relief that this Court deems just.

## COUNT II - FRAUDULENT INDUCEMENT UNDER DELAWARE LAW

45. Plaintiff restates and hereby incorporates by reference paragraphs 1 through 44 hereinabove.

46. Plaintiff's claim for fraudulent inducement under Delaware law arises out of the same nucleus of operative facts as the federal claims such that judicial economy necessitates that all the claims be tried in one proceeding.

47. Jurisdiction for Plaintiff's supplemental claim under Delaware law is conferred on this Court by 28 U.S.C. § 1367.

48. By committing the aforementioned acts, and specifically (1) by making a false representation of material fact; (2) by having knowledge of or belief as to the falsity of the

representation or by the Defendant's reckless indifference to the truth of the representation; (3) by intending to induce the plaintiff to act or refrain from acting; (4) because the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) because there was damage to the plaintiff as a result of such reliance, Defendant fraudulently induced Plaintiff into signing the Severance Agreement.

49. As a direct result of Defendant's wrongful conduct in fraudulently inducing Plaintiff to sign the Severance Agreement, Plaintiff is barred from pursuing a claim for violation of the ADA, and has thus suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

SCHMITTINGER & RODRIGUEZ, P.A.

By: /s/ William D. Fletcher
William D. Fletcher, Jr., Esquire
Bar I.D. # 362

By: /s/ Gary E. Junge
Gary E. Junge, Esquire
Bar I.D. # 6169
414 South State Street
P.O. Box 497
Dover, Delaware 19903-0497
(302) 674-0140
Attorneys for Plaintiff

Dated: 6/10/19

9